You may proceed. Thank you, Your Honors. My name is Richard Calderoni, and I represent the United States in this appeal. May it please the Court, in order to start the one-year assessment period in Section 6501 C-10A of the Internal Revenue Code, a taxpayer must file Form 8886 with IRS components, including the Office of Tax Shelter Analysis. And where does the statute say that? Your Honor, there are two ways in which the statute says that. The first is that it incorporates a regulatory requirement to file Form 8886. Specifically, Statute 6501 C-10A refers to the information required under Section 6011A. That section, in turn, requires taxpayers to make returns and statements according to the forms and regulations of the Secretary, and to include on those returns and statements the information required by the Secretary's forms and regulations. And here, the relevant regulation under Section 6011A is Treasury Regulation 1.6011-4, which expressly states that the disclosure statement required for a taxpayer to disclose a listed transaction or another kind of reportable transaction is a Form 8886, and that form must be completed. So by referring to Section 6501A, Congress indirectly incorporated this preexisting regulatory requirement that taxpayers file Form 8886. And yet it would have been so simple for Congress to say in the statute that you have to file the form specified by the IRS, and it doesn't say that. You have to go through this pretty convoluted path to get to that result. Your Honor, I will concede. Welcome to the tax code. Yes, I will concede that Section 6501 C-10 is perhaps not a model of elegant drafting, but if you're Oh, we're talking here about penalties, aren't we? I mean, we're not, this dispute isn't about the payment of taxes, it's about penalties, right? In this case, yes, Your Honor, although Section 6501 C-10 provides an assessment period that applies to both income taxes and penalties. Are you familiar with the rule of lenity? I am, Your Honor. Why shouldn't it apply here? We're talking about penalties. Well, Your Honor, these are civil penalties. My understanding, although I haven't looked at these cases recently, is that the rule of lenity applies to criminal penalties. Or to the potential of criminal prosecution, which potentially you could have here, even though it hasn't been brought. Well, Your Honor, it hasn't been brought. I have no one. So we should let the taxpayer be subjected not just to tax, but to penalties, because the taxpayer didn't read the statute in the somewhat convoluted way that the government says that it should be read. Your Honor, I'm having a hard time with this, and this strikes me as, isn't this really form over substance? You're not disputing that the information was conveyed. You're disputing that the information wasn't conveyed in the vehicle that the service prefers. And in addition, Your Honor, the information was not conveyed to the service's subject matter experts, with which the regulation also requires. Well, at least one of the people it appears to have been conveyed was to the IRS agent who was auditing this taxpayer's returns. Yes, Your Honor. So it's not like it was sent to the Dubuque office. Not in this case, Your Honor, but under the district court's interpretation of the statute and under Mr. May's interpretation of the statute, he could have sent it to the Dubuque office and the result would be the same. That's fine, but we're dealing with Mr. May, and so we're penalizing Mr. May because in another case it might have been sent to Dubuque even though he didn't send it to Dubuque. How does that make sense? No, Your Honor, we're penalizing Mr. May because he engaged in a listed transaction. He did not disclose that listed transaction with his tax return for tax year 2004 as he was required to do under Treasury Regulation 1.6011-4, and that's perfectly clear. There's no doubt about that. Okay, we're to that point. Yes. And in addition, Your Honor, he did not do what Revenue Procedure 2005-26 expressly says he has to do in order to, without any convoluted cross-references, it's all there in one place. Well, it's pretty convoluted when you call it a revenue procedure because that's not a regulation. So you've got to go beyond the regulations to get to the conclusion that you're seeking. Your Honor, you simply have to go to the guidance that the IRS issued under the specific statute at issue here, which is 6501C10A. At the time of this case, that was Revenue Procedure 2005-26, which says that. Which is not a regulation. Which is not a regulation, although it's a regulation. Which you argue is entitled to skidmore deference. But skidmore deference depends upon it being persuasive in the first place, and there's no persuasion there. It just says this is what the surface thinks it should be. Your Honor, that's not. Where's their persuasion in that revenue procedure? Your Honor, it's not persuasion, but there is reasoning tucked into the background. The Revenue Procedure goes through that series of cross-references that I just laid out for you. It's not hard to see why people aren't real fond of the IRS. Now, mostly it's because you're taking money out of our pockets. But this is a truly convoluted path upon which you propose to penalize, not just get the tax, but penalize the taxpayer without disputing that, in fact, the information was furnished. Your Honor, we do dispute that the information was furnished. The IRS possessed the information. Some of it came from Mr. May. But the word furnish, as this Court recognized in the Walt Properties, is not satisfied simply because the IRS has possession of information or actual notice of certain facts. That word itself gives the IRS the discretion to require information to be presented in a certain manner. Really? What in that word gives discretion? Well, Your Honor, the word furnish If I furnish you 10 minutes of time to argue, are you allowed to specify the form in which I give you the 10 minutes? No, Your Honor. 10 minutes is 10 minutes. But furnish is to supply you with what is needed. If you were to say, you know, I will supply you with however much time you need to argue this case, and I say 15 minutes. Trust me, we won't, but okay. Well, yes. That's fair, Your Honor, yes. But just giving the IRS information in any form is not furnishing information to the IRS, and there's no case out there that says that. And I'll concede to you that I think the district court was pretty broad, but if you go beyond the question of, by relying upon a stipulation that says the IRS institutionally had the information, but at least the allegation has been made that the information was in fact specifically made available, provided to the revenue agent who was responsible for this all, Dubuque, that strikes me as a somewhat different issue as to whether that satisfies what the statute calls for. The information was furnished to the person that, if I were being audited, I think is the one most directly involved. Whether or not that was factually the case may ultimately have to be adjudicated. It's not covered by what we have now. I'll concede that. But I really don't understand why it is the IRS can say, not only do you have to give us the information, you have to give it to us precisely in the form that we want it, when the statute could have said that easily and did not. Your Honor, I would say three things about that. One is that neither the district court nor Mr. May has offered any interpretation of the statutory language that would draw a line anywhere between, you can send it to Dubuque and it's okay, and really this, as on the face of it, if you follow these cross-references and the discretion inherent in the words furnish and secretary allows the IRS to determine how and to whom you give this information. Well, you – I mean, it could be the case that the taxpayer's position is unreasonable. That doesn't make the service's position any more reasonable than it is. It can qualify as unreasonable, too. Well, Your Honor, my point is that no one, to my knowledge, has given us any kind of reading of the statute in between. And I don't see how the statute in Lexington supports that. Well, here I am. In any event, Your Honor – What I'm suggesting is that on the facts as alleged, not yet proven, but on the facts as alleged, the service's interpretation strikes me as pretty extreme. Well, Your Honor, we have perhaps an extreme set of facts here. But this interpretation of a statute is a general issue that applies to all cases. And a penalty is something that applies to an individual. I'm sorry, Your Honor? A penalty is something that applies to an individual. We don't, going to the criminal context again, we don't convict people because they're in a group, and if you interpret the statute differently, somebody might get away. In this instance, if in fact the relevant people at the IRS – and this is hypothetical, I'm not trying to say these are the facts – if the relevant people at the IRS, not just the revenue agent assigned to audit, but the tax shelter office and so forth, have all the information, and they have it knowing that it pertains to this taxpayer, I have a hard time with the position that says, because we didn't get it on Form 8886, none of this counts. Your Honor, the relevant people at the IRS, so far as the record reveals, did not have all the information. And I'm saying, the question I'm posing is a hypothetical. Your interpretation of the statute is that that taxpayer is subject to penalty, even though the right people had the necessary information and knew it pertained to this taxpayer, simply because it didn't come on the form the IRS prefers. And that's the position I'm having trouble with. Your Honor, that's a position that the Supreme Court endorsed as long ago as, I believe it was 1933 in the Lane-Wells case, when it recognized that the uniformity and arrangement of tax information submitted to the IRS is crucial to the administration of a system of taxation founded on self-assessment.  Oh, yes, Your Honor. And the statute here talks about information, not forms. It says information, Your Honor, but it says information required under Section 6011 to be provided or to be included on or with, I forget the preposition, a return or statement. So that is, by its very terms, information on a return or statement. It's also information under 6011, which is, by definition, information on a return or statement. And so it is, indeed, form over substance. You have to have it on the right form or the information doesn't count. That's exactly what Section 6011 says, Your Honor, that taxpayers must make returns and informations according to the regulations and forms of the Secretary. Well, you would argue it's a question of where the information is to be sent and by whom it's to be sent. Those questions are also open in this case, Your Honor. Let me ask you just a couple questions. Certainly. Does the record establish whether or not Mr. May was represented by counsel during the audit? Your Honor, I'm not entirely certain of the answer to that question. I believe he was, but I'm not sure. Maybe opposing counsel can answer that. But the second question I have for you, what precedential value would an opinion from this Court have given the change of the procedure to a regulation? Well, Your Honor, the District Court's opinion, because it refuses to look to any regulatory guidance issued by the IRS because it believed that the statute itself was clear in that it, you know, under the District Court's view, the statutory text clearly allows, gives the taxpayers carte blanche to give all of the information to the Dubuque office in dribs and drabs and that starts the assessment period running. So the District Court's opinion, if it stands, would threaten to preemptively invalidate even the new Treasury regulation. Even with the change? Yes, Your Honor. And in addition, I would note that the new regulation applies only where the statute of limitations remained open on assessment as of March 31st, 2015. So there are doubtless still cases out there in which it's the revenue procedure and not the Treasury regulation that applies. Your response is even beyond that, it would be important? Yes, Your Honor. I'd like to reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. Robert Lord, may it please the Court, on behalf of Appellee Stephen May. This statute, Your Honors, the most commonplace situation where it arises, where the taxpayer's under audit and hasn't made the disclosure. And in order to believe that Congress incorporated Section 6011 regulations into this statute, which is very unusual anyhow to incorporate the regulations under one section into another section, you'd have to believe that if you have two similarly situated taxpayers here, one of them divulges all of the information about the transaction to the IRS agent who's auditing him. The other one does whatever he can to hide the ball from the agent and sends a form into the IRS that the statute starts to run on the second taxpayer, but not on the first. And that's an absurd result. And the reason that the- I don't think the service says the charge to run on number two, if the form isn't sent to the right place and the form doesn't have the information it's supposed to have. I'm sorry, Your Honor? Well, as I heard your hypothetical, he just sends it to the service generically, not necessarily to the, whatever the tax shelter office is called. And I didn't hear in your hypothetical a specification that the form that was sent in contained all the information that was required to contain it. Well, the form has all the information, but he hasn't disclosed to the agent. Because the delegate of the secretary is the delegate of the secretary responsible for initiating the assessment of tax. That's the logical interpretation in that context. Part of what we're being told is that it's not just that person. Because with tax shelters, they need the expertise of the people that specialize in tax shelters. Which is why the form is required to be submitted not just to the office in question, but to this other office, the name of which keeps escaping me. The Office of Tax Shelter Analysis, Your Honor. So, in your hypothetical, do you include sending the form to the Office of Tax Shelter Analysis? No, I believe not. If you don't, then I think the service has a basis for saying, look, we require it to be sent to these people that really know this subject area, because they're the ones that really know this subject area. And the revenue agent assigned to the audit in whatever town your client is in, in Phoenix, may not know about those. Actually, Your Honor, the agent knows enough to provide the information to that Office of Tax Shelter Analysis. The agent can go to that office for help if necessary. And remember, they have a year from the time the information is provided to initiate the assessment process. Doesn't the service have an interest in having it in the form, the 8886 form, for purposes of efficiency? Not early on, yes. But once the taxpayer is under audit, no. Because at that point, auditing agents get involved in raw data. They're way beyond the skeletal information on that form. Let me ask you the same question I ask opposing counsel. Was Mr. May represented by counsel during the audit? No. Was he represented by a CPA? I believe he was represented by, actually, by the firm that promoted the shelter, Cruz Manillo. Is that an accounting firm? Yeah. But in any case, any defect in the provision of information becomes a moot point once the IRS has acted on the information in the desired manner But once the IRS sent the taxpayer here a 30-day letter, and by the way, obtained extensions of the statute for the other two years involved, once they did that, any shortcoming in the furnishing of the information was cured. Is there any difference in the three years? Any other reason why they would have obtained the extensions for the other two years and not for this one? I suspect, Your Honor, but don't know for sure that they originally thought that the six-year statute that applies in the income tax context applies here, because they actually had this information way back in 2008 or 2009. And by the time they realized that the six-year statute didn't apply under 6707A, they had a problem. And this is how they tried to solve it with this technical interpretation. But the United States relies heavily on golf properties. But if you look carefully at golf properties, you have this section 6229E. And it says the statute stays open until the name, address, and taxpayer identification number of the so-called unidentified partner is submitted. And there's procedures for doing that. You have another statute, 6229B1A, I believe it is, that says they can enter into an agreement to extend the statute with that taxpayer. Now, by necessity, they have to have that information to enter into the 6229B1A extension. And if you look at both the tax court and the D.C. Circuit opinions, they're essentially recognizing that, and by the way, they ultimately did enter into that extension agreement with the taxpayer in golf. If you dig into those opinions, they're implicitly recognizing that once they enter into that 6229B1A agreement, any remaining thing left to start triggering that one-year period under 6229E is a moot point because they, by definition, have to have been furnished the information to enter into that agreement. Same thing here. Once they entered into the Forms 872 for the 2005 and 2006 years and issued a 30-day letter to Mr. May in March of 2010, by definition, they waived any defect in the furnishing of information. They had it. They acted on it. In fact, if Mr. May doesn't submit a protest letter, this penalty would have been assessed right then and there. If their position is right that only the provision of the information on the proper form is sufficient, then the fact that they've acknowledged by issuance of what you described that they knew what they needed to know doesn't change the fact that they didn't know it through receipt of the proper form, if in fact the form is what's required to trigger the running of the one year. So I'm not sure you can fairly say they've waived the position simply because they've acknowledged having the information they needed. Well, at that point, once they've done that, Your Honor, the statutory purpose has been served. The statute isn't about the furnishing of information. The statute is about placing the IRS in a position where it can initiate the assessment process or it should be deemed to be in a position to initiate the assessment process. Now, the should be deemed to be in a position part, yeah, they can regulate that. But where they're actually placed in that position, that information has been furnished at that time. And I think the analogy is where the statutory notice of deficiency goes out from the IRS and they completely botched the mailing of it. But nonetheless, the taxpayer learns of the service's position, doesn't even have to get the actual copy of the notice, can find out about it in a telephone call, files a petition in tax court. Once the taxpayer files that petition in tax court, problem solved if the petition is filed timely. Same situation here. Once they issued that notice of deficiency, once they issued that 30-day letter, any issues with the manner in which the information was provided became a moot point. I'd also like to remind the court that we have a motion to supplement the record and to strike portions of the reply brief on section 6501C10B. And if you go to the last page of text of the reply brief, they say quite clearly that 6501C10B was necessarily not satisfied unless Cruz Manillo provided May's name to the government and that May argues that the government's discovery responses did not allow him to determine whether the name was provided to the IRS. Well, we now know that those documents which the government refused to produce at trial, but kind of by happenstance produced in a separate case, that they totally contradict that position. Those documents show that May's name was produced over and over and over again by Cruz Manillo to the IRS. Now, counsel tried to solve that problem by saying, well, we don't know it was the IRS that they were produced to in the Cruz Manillo litigation. But they were. They were produced to Janice Mallon of the IRS. And there's an affidavit attached to this, to their response. The trial court never reached that issue, right? Trial court did not reach the issue, no. But the trial court, Your Honor, there were misrepresentations to the trial court. The trial court was told that these documents were number one, irrelevant, and that it would be unduly burdensome to manually search the record. You want us to send it back if you don't prevail on the issue you just argued? Well, I would urge you in the interest of judicial efficiency in this $20,000 case that you look at these documents and they're compelling. But wouldn't we then be finders of fact? It's not a question of law, is it? Well, I think you do have the latitude to take judicial notice of additional evidence. I've kind of outlined that in my motion to supplement. And there's little, I mean, there's not much going on here. The documents show quite clear, and these are documents, the reliability is unquestionable. They came from the government. The documents show quite clearly that May's name was disclosed. And all the other information required under Section 6501C10B, it's quite obvious that the government had because if you read the Stover opinion written in 2010 from the District Court of Missouri, that they had all the information. There's no question that C10B was satisfied here. Before your time runs out, I'd like to go back to the trial court's decision. And you heard your colleague across the aisle point out that that decision leaves open the possibility of the information being sent to what I've called Dubuque. Now, that's not the fact of this case. But how would you define, how would you interpret the statute? Because our job now is to write something that does interpret the statute. How would you interpret the statute in such a way as not to cause that problem? Because you have to disclose the information to the delegate of the secretary who's responsible for initiating the assessment of tax. That's what the statute is about, the assessment of tax, or in this case, the penalty. And the office in Dubuque has nothing to do with that. So, and that the, whether the information was disclosed to the proper delegate wasn't even an issue, wasn't even raised in the trial court. I don't think it should be an issue now. There's no question that the agent, and by the way, it was also disclosed to the appeals officer more than a year before the assessment. And the appeals officer, once it went to IRS appeals, became the delegate of the secretary responsible for initiating the assessment of tax. And that was the only thing the appeals officer was charged with at that point, was assessing this 6707A penalty. I guess I have a minute or so left. You're not required to use it. Well, I want to make a point here about this, these additional records. The government, in its response, said we don't know that those were disclosed to the, those were produced to the IRS. Well, I've outlined in my reply why they were, but that was a little disingenuous because Mr. Calderon's co-counsel, who he references in that affidavit, Bruce Ellison, was also one of two attorneys of record in the Stover case. It went up to the Eighth Circuit on appeal. And you couldn't have, you can't read the district courts and the, the circuit court's opinion in Stover, let alone be involved in briefing the court and not know that those documents were in possession of the IRS. With that, I'll close. Thank you, Your Honor. Thank you very much, Counsel. Over to Buttle. Thank you, Your Honors. Contrary to what Mr. Lord said, there's actually no dispute here that C-10B was not satisfied. The statute of limitations starts to run under that section only if a material advisor provides that whole list of specified information to the IRS in response to a request made under Section 6112. And even by Mr. May's own lights, if the IRS had all of this information, somehow we didn't have it in response to a 6112 request. It had it in a trove of documents seized during the execution of a search warrant in a criminal investigation. Moreover, as the Fifth Circuit held in the Beemont case, material advisors have to provide this information in a way that allows the IRS to ascertain the relevant information without undue delay or difficulty. That's in the regulations incorporated into 6112. And when you have this information on a few scattered documents in a trove of seized documents in a criminal investigation, like so many pieces of a broken needle in a haystack, that requirement is also not satisfied. Would that be your response also to his argument that the information was in the possession of the appeals officer more than one year out? Your Honor, that goes back to C-10A. And my response to that is it doesn't matter if it was in the possession of the appeals officer. The form had to be filed with the service center and with the Office of Tax Shelter Analysis. And there's no dispute on this record that Mr. May provided no information at all to the Office of Tax Shelter Analysis. And to go back to Judge Clifton's point, this is clearly spelled out in the Revenue Procedure. It says that you have to file Form 8886. It says where you have to file Form 8886. There's no need to traipse through the entire series of cross-references. That's undoubtedly why the Revenue Procedure exists. And it's not necessary for the Revenue Procedure to contain any reasoning under this Court's decision in Tualatin Valley for that procedure to be entitled to a significant degree of Skidmore deference, especially where it's... Well, Skidmore deference from the get-go requires on... We defer to it based on how persuasive it is. Your Honor... And to tell us that the IRS wants it this way, okay, that tells us the IRS wants it that way, doesn't necessarily tell us what the statute means. Well, Your Honor, Skidmore deference also depends on the expertise of the agency, the guidance, and factors like that. It's undisputed that those all are satisfied here. We have an express grant of regulatory authority. But the IRS thinks forms should prevail no matter what the substance. That's the IRS's position, and that's what you think the Revenue Procedure says. Your Honor, very quickly, I would say that if a taxpayer had filed a very close substitute and had a good excuse for not filing the form itself, and filed it with the right people, we could have a discussion about substantial compliance. But substantial compliance doesn't exist where there's a requirement to file a form that isn't filed, and that's what happened here. Well, you just took back in the second half of the sentence what you offered up in the first, because you said we don't have substantial compliance when the form's not filed. Either you mean that or you don't. I mean, Your Honor, there are narrow circumstances in which we might have substantial compliance when the form is not filed, but those circumstances aren't present here. Let me ask you something else triggered by what Mr. Lord commented upon. There were extensions obtained on the period of time with regard to two of the years, but not for this year. How come? It's not entirely clear, Your Honor. The only evidence on that point that I'm aware of in the record is the revenue agent's relying on the assessment period in C-10A for tax year 2004, and therefore, apparently shouldn't Why would you need to get it for, did he ever file the 88-86 for the other tax years? He did not, Your Honor. So as far as the service is concerned, they never needed any of these because the period never started to run, and yet they did get them for 2005-2006, suggesting to me that maybe the service isn't all that convinced that its interpretation is that reliable, because otherwise, why bother to get it? He never filed the 88-86. Your Honor, I see it as a belt-and-suspenders approach, and at page 32 of the supplemental excerpts of record, you can see the revenue agent expressly saying that she was relying on the assessment period in C-10A. Thank you very much. Thank you very much, counsel. This matter is submitted. Thank you for your argument.
judges: Clifton, Owens, Antoon